# United States Court of Appeals for the Federal Circuit

2009-3155

WILLIAM H. ARMSTRONG,

Petitioner,

v.

DEPARTMENT OF THE TREASURY,

Respondent.


Kevin E. Byrnes, Schnader Harrison Segal & Lewis, LLP, of Washington, DC, argued for petitioner.

Christopher A. Bowen, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Kenneth M. Dintzer, Assistant Director.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2009-3155

WILLIAM H. ARMSTRONG,

Petitioner,

v.

DEPARTMENT OF THE TREASURY,

Respondent.

Petition for review of the Merit Systems Protection Board in consolidated case nos. DC0752080188-C-1 and DC0752080188-I-1.

_____

DECIDED:  January 4, 2010

_____

Before MICHEL, <u>Chief Judge</u>, PLAGER, and LINN, <u>Circuit Judges</u>.

MICHEL, <u>Chief Judge</u>.

William Armstrong filed an untimely petition for review with the Merit Systems Protection Board (MSPB), seeking review of the Administrative Judge's (AJ's) decision dismissing his case under a settlement agreement.  The MSPB declined to decide Armstrong's petition for review, finding that, because Armstrong's new evidence of fraud in the procurement of the agreement was insufficient to render the agreement invalid, it would not excuse the untimeliness of his petition.  Because the MSPB improperly conflated the issue of timeliness with the ultimate decision on the merits of Armstrong's claim, we vacate the MSPB's decision on the petition for review, and we remand for

further proceedings to determine whether the MSPB should waive its timeliness requirement to permit Armstrong's case to be decided on the merits.

The MSPB also held that Armstrong abandoned any appeal from the AJ's separate decision that Armstrong's employing agency, the Treasury Inspector General for Tax Administration (TIGTA), had not breached the settlement agreement. Because we agree with the MSPB that Armstrong abandoned the appeal of that decision, we affirm the MSPB with respect to its compliance decision.

## I. BACKGROUND

William Armstrong served as a GS-14 criminal investigator for the Treasury Inspector General for Tax Administration (TIGTA). In October 2006, TIGTA began investigating him for unlawfully accessing computer databases. On September 4, 2007, TIGTA proposed Armstrong's removal, and TIGTA decided on December 4, 2007, to remove Armstrong effective December 11, 2007. Armstrong v. Geithner, 610 F. Supp. 2d 66, 68 (D.D.C. 2009).

During the investigation and the disciplinary proceedings regarding his position with TIGTA, Armstrong sought other employment with the government. On August 20, 2007, the Department of Agriculture (USDA) sent Armstrong a letter confirming its offer of a GS-14 criminal investigator position, with a start date of September 2, 2007. Shortly after USDA sent the August 20 letter, the USDA received six anonymous letters accusing Armstrong of serious misconduct. Armstrong alleged that these letters were written by various employees of TIGTA. Apparently in response to these letters, the USDA placed a hold on its job offer to Armstrong. On January 2, 2008, USDA

requested information from TIGTA regarding the status of Armstrong's disciplinary matter.

Armstrong appealed his December 4 removal to the MSPB, and the case was settled on February 7, 2008. The settlement agreement substituted a thirty-day suspension for the removal, required TIGTA to generate a new SF-50 documenting the suspension and the charges supporting it, required TIGTA to remove from Armstrong's record any documentation concerning the rescinded removal, prohibited TIGTA from giving the USDA any information about the rescinded removal, required employment inquiries about Armstrong to be routed through a particular office, and limited TIGTA's response to any employment inquiries about Armstrong to Armstrong's dates of employment, grades, salary information, and classification series. The settlement agreement did not prohibit TIGTA from responding fully and truthfully to inquiries in suitability or security clearance background investigations. As part of the settlement, TIGTA and Armstrong negotiated TIGTA's response to the January 2 USDA request for information about the disciplinary action against Armstrong, specifying that TIGTA would tell USDA only that Armstrong had been suspended from duty and pay for thirty days and had remained on the rolls in the position of assistant special agent in charge. The AJ entered the parties' settlement agreement into the record and dismissed the case due to settlement on February 19, 2008.

At the same time that Armstrong's initial MSPB appeal was pending, Armstrong also was suing TIGTA in the U.S. District Court for the District of Columbia, alleging that TIGTA had violated the Privacy Act and that individual TIGTA officials had defamed him when the anonymous letters were sent to USDA. On March 18, 2008, TIGTA filed its

initial disclosures in that suit. Armstrong believed the initial disclosures violated the MSPB settlement agreement, because they contained statements about what TIGTA's witnesses would say at trial about why Armstrong was originally removed from his position. In the course of discovery during the Privacy Act litigation, TIGTA turned over to Armstrong some reports prepared by TIGTA investigators. Armstrong claims that these reports showed that TIGTA's investigators met with Kathy Horsley, the USDA hiring official, in or around August and September 2007, twice in December 2007, and once in January 2008.

Armstrong believes that the failure of TIGTA to disclose to Armstrong these contacts between TIGTA and USDA, together with TIGTA's February 2008 representation that TIGTA had had no contact in 2008 with USDA, constitutes fraud by TIGTA. Thus, he believes that the settlement agreement in his initial MSPB appeal was obtained through fraud and should not be enforced, and his original MSPB complaint should be reinstated. On May 28, 2008, Armstrong filed a pleading with the MSPB to this effect. In the alternative, Armstrong sought a holding that TIGTA had breached the settlement agreement by allowing or instructing its investigators to speak to Ms. Horsley in August 2007, September 2007, December 2007, and January 2008.

The AJ treated the May 28 filing as a petition for enforcement of the settlement agreement. She noted that there were two avenues for reviewing a settlement agreement. First, if Armstrong wished to argue that the agreement was invalid because it was obtained by fraud or coercion or was entered into through mutual mistake, that argument could only be raised in a petition to the full Board for review of the initial decision by the AJ to dismiss the MSPB appeal based on the settlement agreement.

Second, if Armstrong wished to challenge the agency's compliance with the terms of the agreement, he could do so by filing a petition for enforcement with the regional office that dismissed the MSPB appeal based on the settlement agreement. Because Armstrong had filed with the regional office, the AJ found that the proper response was to treat the May 28 filing as a petition for enforcement (focused on the breach issue) rather than as a petition for review (focused on the fraud issue) and to inform Armstrong that he could file a separate petition for review with the full Board. The AJ then proceeded to deny the petition for enforcement because any improper contacts between TIGTA and USDA were alleged to have occurred no later than January 2, 2008, while the settlement agreement was executed on February 7, 2008. Because the alleged breaching acts occurred before the contract was executed, those acts could not constitute a breach. The AJ's decision was issued July 14, 2008.

On August 12, 2008, Armstrong filed with the full MSPB a petition for review of the settlement agreement, seeking to set aside the agreement on the grounds that the agreement was a product of fraud and misrepresentation. The clerk of the MSPB told Armstrong that the petition would be treated as seeking both review of the settlement agreement and review of the July 14 compliance decision denying the petition for enforcement. Despite this, Armstrong did not make any argument concerning the compliance decision. With respect to the settlement agreement, the MSPB treated the petition for review as a petition to review the February 19, 2008 decision of the AJ to dismiss the case due to the settlement agreement. Because the MSPB's regulations required such a petition to be filed within 35 days after the decision for which review was sought, the MSPB required Armstrong to file a motion asking the MSPB to waive

the time limit for good cause, along with a sworn statement or affidavit in support of the "good cause" argument. Armstrong filed such a motion and statement.

The MSPB first considered whether to waive its time limit for filing the petition for review of the settlement decision. The MSPB treated Armstrong's original May 28, 2008 petition (which had been filed in the wrong place for a petition for review of the settlement agreement and which had a title that suggested it should be treated as a petition for enforcement of TIGTA's compliance with the settlement agreement, rather than a petition for review of the settlement agreement) as the operative filing for timeliness purposes, because Armstrong acted with due diligence from that point forward. That May 28 filing still came 99 days after the February 19 decision. The MSPB held that it would waive the 35-day time limit if Armstrong could point to new evidence that was not available before the original decision, that was discovered after the original decision, and that was likely to invalidate the settlement agreement because it showed fraud or misrepresentation. The MSPB then found that the evidence Armstrong presented was insufficient to show any misrepresentation by TIGTA.

In coming to this conclusion, the MSPB reviewed each of the allegedly improper contacts between TIGTA and USDA to determine whether any one of them contradicted TIGTA's representations during the settlement negotiations. First, TIGTA stated in a February 5, 2008 email to Armstrong's lawyer that it was unaware of any contacts between TIGTA and USDA after December 2007, so this statement could not mislead Armstrong (or any reasonable person) as to the existence of contacts between the agencies in or before December 2007. This eliminated any of the contacts that Armstrong alleged occurred in August, September, or December 2007. Second, the

contact between USDA and TIGTA that occurred during December 2007 appeared from Armstrong's evidence to be an innocent conversation about Armstrong's Privacy Act suit, not a conversation intended to convince USDA to rescind Armstrong's job offer. Third, the MSPB found that the one non-disclosed post-2007 contact between TIGTA and USDA (which occurred on January 10, 2008) was, like the December 2007 contact, merely an interview with a USDA employee regarding TIGTA's defense of Armstrong's Privacy Act suit. Fourth, the MSPB found that, while the January 2008 contact contradicted TIGTA's February 5 assurance that TIGTA had had no contact with USDA after 2007, the misrepresentation was not a knowing misrepresentation; instead, it was due to a failure to inform the employee who drafted the February 5 email about the January contact. Finally, the MSPB found that the USDA's reason for placing Armstrong's offer on hold was not any information gleaned from improper contacts with TIGTA employees, but was instead Armstrong's own statements to USDA. Given that the new evidence Armstrong uncovered would not be likely to show that he had agreed to the settlement agreement only because of TIGTA's fraud, the MSPB declined to waive its time limits for raising the new evidence.

Having disposed of the petition for review of the settlement decision on these timeliness grounds, the MSPB proceeded to consider Armstrong's petition for review of the AJ's July 14 compliance decision. Because Armstrong merely disagreed with the AJ's decision without providing any argument as to why that decision was incorrect, the MSPB held that Armstrong's petition for review of the compliance decision failed to meet the MSPB's criteria for review under 5 C.F.R. § 1201.115(a), (d). It therefore denied Armstrong's petition for review of the compliance decision.

Following the March 6, 2009 decision of the MSPB, Armstrong filed the present appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1).

## II. DISCUSSION

### A. Timeliness of the Petition for Review

We first examine the MSPB's decision that Armstrong could not be permitted to file his untimely petition for review. A petition for review of an AJ's decision is required to be filed with the full MSPB within 35 days. 5 C.F.R. § 1201.114(d). The MSPB has discretion, though, to waive regulatory requirements, including the 35-day time limit, if a party requests such a waiver and shows good cause for waiving the requirement. 5 C.F.R. § 1201.12 and § 1201.114(f). The regulations and statutes governing the MSPB do not define what constitutes "good cause" for waiving the timeliness requirement. The MSPB has previously held that "[t]he discovery of new evidence may establish good cause for the untimely filing of a petition for review 'if the evidence was not readily available before the close of the record below, and is of sufficient weight to warrant a different outcome from that of the initial decision.'" Jones v. Dep't of Transp., 69 M.S.P.R. 21, 26 (1995) (quoting Boyd-Casey v. Dep't of Veterans Affairs, 62 M.S.P.R. 530, 532 (1994)). This same standard has been applied by the MSPB in other cases as well. See, e.g., De La Gal v. Dep't of Justice, 79 M.S.P.R. 396, 399 (1998). Both Jones and De La Gal were affirmed by the Federal Circuit in non-precedential decisions. De La Gal v. Merit Sys. Prot. Bd., 194 F.3d 1336 (Fed. Cir. 1998) (table); Jones v. Dep't of Transp., 111 F.3d 144 (Fed. Cir. 1997) (table). In light of this court's prior implicit acceptance of the MSPB's standard for waiving the timeliness requirement in light of new evidence, we cannot say that it was wrong for the MSPB to consider whether

Armstrong's new evidence was "of sufficient weight to warrant a different outcome from that of the initial decision."

But our approval of this standard does not mean that satisfying it is the only way that a petitioner may gain a waiver of the MSPB's timeliness requirement. Certainly, there may be cases in which satisfaction of the sufficient-to-warrant-a-different-outcome standard is the only appropriate criterion by which to judge timeliness. In De La Gal, for example, the evidence uncovered after the close of the original record was over 18 months old at the time the petitioner filed his petition for review. 79 M.S.P.R. at 400-01. Given the lengthy delay between the discovery of the evidence and the filing of the petition for review, which implied a lack of diligence on the part of the petitioner, it was clearly appropriate for the MSPB to inquire whether it would be worthwhile to consider the new evidence.

Here, though, we are not convinced that the record demonstrates a similar lack of diligence on Armstrong's part. Armstrong alleges that the first time he learned of the allegedly improper contacts between TIGTA and USDA personnel was when TIGTA produced its investigators' reports during discovery in the Privacy Act suit. These were produced on May 9, 2008. Given that the MSPB found that Armstrong's effective petition filing date was May 28, 2008, an alleged discovery date of May 9 suggests that Armstrong tried to bring the newly discovered evidence to the MSPB's attention promptly. This prompt reaction to evidence tending to show that the settlement agreement may have been procured through fraud should not be subject to the same narrow standard as the dilatory reaction to similar evidence in De La Gal.

Nor is the situation here similar to that in Jones. In that case, the petitioner had explicitly waived his argument that the settlement agreement was invalid, and the MSPB held that, despite new evidence tending to support that theory, the argument could not be raised after it had been waived. 69 M.S.P.R. at 26-27. Here, though, Armstrong never departed from his argument that the new evidence showed that the settlement agreement had been procured through fraud and should be considered void ab initio, even though he also made the alternative argument that TIGTA had breached the settlement agreement.

When a petitioner delays before filing a petition for review, as in De La Gal, or when a petitioner presents new evidence supporting a theory that he previously waived, as in Jones, justice may require waiving the timeliness requirement only when the new evidence is likely to change the result originally reached. But where neither of these circumstances applies, as here, we do not believe the timeliness requirement needs to be so stringently applied. It may be that Armstrong's new evidence will not change the outcome; we express no opinion on whether this is so. But whether it changes the result or not has no bearing on whether Armstrong was diligent in filing his petition after discovering the new evidence. Because the MSPB improperly conflated the issue of whether Armstrong should prevail on the merits of his petition with the issue of whether his petition was timely filed, we vacate the MSPB's decision and remand for further proceedings. On remand, the MSPB should conduct whatever proceedings are necessary to determine when Armstrong actually learned of the existence of the new evidence he presents in support of the theory that the settlement agreement was procured through fraud. If the delay between his learning of the existence of this

evidence and his filing his petition for review does not indicate a lack of diligence, as Armstrong alleges, then the MSPB should waive the timeliness requirement. At that point, the MSPB may conduct whatever proceedings are necessary to determine the merits of Armstrong's claim.

## B.     Abandonment of the Appeal of the Compliance Decision

The MSPB treated Armstrong's petition for review as presenting both the question whether the settlement agreement should be found invalid due to fraud (discussed above) and another question: whether TIGTA's initial disclosures in the Privacy Act lawsuit constituted a breach of the settlement agreement. The AJ had held that the disclosures did not breach the agreement, and the MSPB was prepared to consider any challenge Armstrong made to this decision, but the MSPB found that Armstrong failed to present any argument or evidence suggesting that the AJ's decision was incorrect. Because of this abandonment of Armstrong's challenge to the AJ's compliance decision, the MSPB refused to hear Armstrong's challenge on this issue. On appeal, Armstrong challenges the MSPB's holding that he abandoned his argument regarding the AJ's compliance decision.

The MSPB did not abuse its discretion when it held that Armstrong had abandoned his challenge to the AJ's compliance decision. First, Armstrong's petition for review bore the docket number associated with his first MSPB case (the case that was settled by the February 2008 agreement), rather than the docket number associated with the AJ's compliance decision. Second, we agree that Armstrong's petition contained no argument or citations to authority specifically directed to the compliance decision, although it did express disagreement with the AJ's findings. Third,

Armstrong's petition for review did not ask the MSPB to reverse the AJ's compliance decision. Fourth, the argument section of Armstrong's petition is headed "Fraud; Deception in Securing Agreement," and it provides no argument that (or even any asserted reasons why) the AJ's compliance decision was wrong. For these reasons, we hold that the Board did not abuse its discretion when it denied Armstrong's petition for review of the compliance decision.

In addition, Armstrong presents no argument as to the incorrectness of the AJ's decision that TIGTA did not breach the settlement agreement, and he presents no argument on appeal as to the MSPB's decision that he abandoned the argument (beyond the simple and unsupported statement that he "did not" abandon this issue). Thus, even if Armstrong had not abandoned his breach argument at the MSPB stage, he has abandoned it here. We therefore affirm the MSPB's holding that Armstrong abandoned his appeal of the AJ's compliance decision.

## CONCLUSION

For the reasons discussed above, we affirm that portion of the MSPB's decision that denied Armstrong's petition for review of the AJ's compliance decision, and we vacate that portion of the MSPB's decision that held that the timeliness requirement for Armstrong's petition for review could not be waived. We remand to the MSPB for further proceedings to determine whether the timeliness requirement should be waived and for proceedings on the merits if they are warranted following the decision on the timeliness issue.

## COSTS

No costs.

## AFFIRMED IN PART, VACATED IN PART, AND REMANDED