# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

HEATHER A. BOYD,
>                Appellant,

>        v.

DEPARTMENT OF THE TREASURY,
>                Agency.

DOCKET NUMBER
SF-0752-15-0128-I-1

DATE: September 10, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Heather A. Boyd, Honolulu, Hawaii, pro se.

Timothy E. Heinlein, Esquire, San Francisco, California, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1       The appellant has filed a petition for review of the initial decision, which dismissed the appeal for lack of Board jurisdiction based on a finding that the appellant violated the terms of a last-chance agreement (LCA). Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2        On October 26, 2012, the agency removed the appellant, a Tax Specialist for the Internal Revenue Service, on charges of failure to follow a managerial directive and failure to properly secure her government-issued laptop computer. Initial Appeal File (IAF), Tab 4, Subtabs 4j-4k.  On November 1, 2012, the parties signed an LCA mitigating the removal to a 25-day suspension. *Id.*, Subtab 4i at 1, 4.  The appellant agreed to comply with the conditions of the LCA, which included following her manager's instructions and directives, and following all rules of conduct set forth in the agency's Standards of Ethical Conduct. *Id.* at 1-2.  She agreed that if she violated any of these conditions within the next 2 years the agency could summarily terminate her employment. *Id.* at 2.  She waived her right to appeal both the procedures used to carry out and the merits of any termination action taken under the agreement, except that she retained the right to appeal to the Board to challenge whether she breached the terms of the agreement. *Id.*  The waiver applied even if the agency delayed implementing a termination action for misconduct committed during the term of the agreement until after the 2-year term ended. *Id.* at 3.  The appellant retained the right to raise claims of discrimination and retaliation through the agency's

equal employment opportunity (EEO) process, unless she asserted those claims in conjunction with a Board appeal challenging whether she had breached the conditions of the LCA.  *Id.* at 2.

¶3        Less than a month before the 2-year period was to end, the appellant was involved in two incidents that the agency alleged violated the terms of the LCA.  IAF, Tab 4, Subtab 4b.  First, during a conversation with the vice president of her union chapter, V.L., the appellant stated that she "uncontrollably" and "recklessly" hated the chapter president, J.B., and would "go Jihad all over her" if J.B. did not step down.  *Id.* at 1; *id.*, Subtab 4c.  Second, a day after her supervisor advised the appellant "against taking on other peoples['] issues," the appellant emailed another agency supervisor saying that she believed a coworker was being racially harassed.  *Id.*, Subtab 4b at 1, Subtabs 4e-4f.  Based on these incidents, the agency terminated her employment.  *Id.*, Subtab 4b at 1.  She appealed the termination.  IAF, Tab 2.  The administrative judge held a jurisdictional hearing on February 13, 2015, and the record closed at the end of the hearing.  Hearing Compact Disc (HCD) 2 (closing).  The administrative judge found that the appellant violated the terms of the LCA and that the appeal thus did not fall within the Board's jurisdiction.  IAF, Tab 21, Initial Decision (ID) at 4-9.

¶4        The appellant has filed a petition for review.[2]  Petition for Review (PFR) File, Tab 2.  On review, she contends that the administrative judge excluded witnesses whose testimony would have proven that the LCA was based upon fraud and that she was in full compliance with that agreement.  *Id.* at 1.  Administrative judges have wide discretion under 5 C.F.R. § 1201.41(b)(8), (10) to exclude witnesses where it has not been shown that their testimony would be

---

[2] The filing period for the petition for review ended on April 6, 2015.  ID at 9.  The appellant filed the petition for review by U.S. mail on April 8, 2015.  PFR File, Tab 2. Nevertheless, the petition is timely because she filed a partial petition by facsimile with the Office of the Clerk of the Board on April 6, 2015.  PFR File, Tabs 1, 3.

relevant, material, and nonrepetitious. *Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985). The administrative judge here excluded witnesses requested by both the appellant and the agency during the prehearing conference because he found that "their testimony would be cumulative or on matters that are undisputed or irrelevant to the issues" in the appeal. IAF, Tab 16 at 5. He summarized his rationale for excluding certain proffered witnesses in the summary of the prehearing conference. *Id.* He stated that he would consider allowing parties to call specific proffered witnesses on rebuttal. *Id.* As for some witnesses that the appellant requested, he explained that her brief proffers did not show that their testimony, or the matters that they would address, would be relevant to the appeal. *Id.* The appellant did not object to the prehearing conference summary, even though she was given an opportunity to do so. *Id.* at 7. In any event, she also has not identified any specific witness that was excluded over her objections. Her argument is thus unavailing.

¶5    The appellant also contends that the administrative judge failed to admit her timely submitted evidence. Administrative judges have broad discretion to allow or disallow a party's proposed exhibits. *Vaughn v. Department of the Treasury*, 119 M.S.P.R. 605, ¶ 14 (2013). The administrative judge here explained during the prehearing conference that several of the exhibits the appellant had submitted were of poor quality, and he invited her to tender cleaner copies of these exhibits before the hearing. ID at 3; IAF, Tab 16 at 5-6. On the morning of the hearing, the appellant presented several pages of documents. IAF, Tab 17. The administrative judge found that the items were not cleaner copies of previously submitted exhibits, but were instead new exhibits. ID at 3. He rejected the exhibits because she failed to show good cause for submitting them after the deadline for prehearing submissions. *See* IAF, Tab 7 at 2. He noted,

however, that had he accepted these documents, they would not have changed his findings.[3]  ID at 3.

¶6    The appellant takes issue with the agency's characterization of events in her termination letter, explaining that the letter does not agree with the source documents that the agency provided, *see* PFR File, Tab 2 at 7, 10, and she did not commit the misconduct described in the letter, *see id.* at 1, 4-6.  Regarding the first instance of misconduct, the appellant argues that the agency management "could not cite any source of law, policies, or procedures that gave them authority to act" regarding the comment she made about "go[ing] jihad" against J.B.  *Id.* at 2.  She argues that she made the comment while she was acting in the role of a union member, and not as an employee.  *Id.*  She argues that she made the comment not to her fellow employees, but to union representatives, whom she assumed were representing her interests.  *Id.* at 2-5.  She claims that she made the comments after her tour of duty ended and outside of the workplace.  *Id.* at 5.  She asserts that she had a reasonable expectation that the pertinent conversations were confidential, and any discord arising from her remarks resulted from the breach of confidentiality.  *Id.* at 5-6.  She further asserts that the agency should not have been allowed to rely upon email correspondence from the union documenting her conduct, and instead, it should have conducted an independent investigation.  *Id.* at 2, 9-12.

---

[3] The appellant supplied several documents with her petition for review, including some of the documents she submitted after the prehearing conference.  *Compare* PFR File, Tab 2 at 14-19, *with* IAF, Tab 17 at 2-5, 7-8.  These items duplicate documents already in the record and cannot be considered to be a basis for review.  *See Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980) (the Board will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence); *Meier v. Department of the Interior*, 3 M.S.P.R. 247, 256 (1980) (evidence that is already a part of the record is not new).  For the same reason, another item submitted with the petition for review, the index to the agency file, cannot be considered new evidence.  *Compare* PFR File, Tab 2 at 13, *with* IAF, Tab 4 at 3.  The remaining items submitted on review cannot be considered new because they were available to the appellant before the record closed below.  *See* PFR File, Tab 2 at 20-34.

¶7          The appellant's arguments notwithstanding, the record supports the administrative judge's findings.  In the proceedings below, she did not dispute that the conversation in question took place on agency premises, and that she initiated it during her tour of duty.  *See* HCD 2 (testimony of appellant); *see also* HCD 1 (testimony of V.L.).  The union officials participating were fellow agency employees, and not outsiders.  We find, for reasons similar to those set forth in *Berkner v. Department of Commerce*, 116 M.S.P.R. 277, ¶¶ 6-15 (2011), that her remarks cannot be deemed privileged.  As in *Berkner*, the union reported the appellant's inflammatory remarks to the agency because its officials believed that she might present a danger.    IAF, Tab 4, Subtabs 4c-4d; *see Berkner*, 116 M.S.P.R. 277, ¶¶ 2, 9, 11.

¶8          The appellant also asserts that her remarks were intended as hyperbole, and that V.L. seemed to understand the exaggerated nature of the remarks during the conversation.  PFR File, Tab 2 at 6, 10-11.   She further asserts that agency and union officials misunderstood the meaning of the word "jihad" and assumed that she intended to harm J.B.  *Id.* at 4-6, 10-11.  She argues that it was unreasonable for J.B. to fear her.  *Id.* at 4, 10.  Although the appellant may now contend that the word "jihad" described her internal "spiritual struggle … against sin," PFR File, Tab 2 at 4, 24, the context in which she used the word, coupled with her expression of hatred towards J.B. and her demand that J.B. step down, suggests that she intended to convey a more commonly understood definition of the word."  In such case, it was reasonable for V.L to discern a threat, for J.B. to feel threatened, and for the agency to conclude that the statements fell within the scope of misconduct that causes dissension or discord.  *See* IAF, Tab 4, Subtab 4i at 2, Subtab 4t at 27.   The appellant's arguments on review are insufficient to prove otherwise.  *See Willis v. Department of Defense*, 105 M.S.P.R. 466, ¶ 17 (2007) (finding that the appellant bears the burden of proving that the Board should not enforce her waiver of appeal rights in an LCA).

¶9     As for the second instance of misconduct, the email message she sent to another agency employee after she was instructed not to participate in office gossip, *see* IAF, Tab 4, Subtab 4b at 1, the appellant argues that her conduct was proper, PFR File, Tab 2 at 3. She explains that J.B. had used a Hawaiian racial slur offensive to Caucasians, and management had taken no action when she reported the matter. *Id.* at 3. The appellant, who is Caucasian, additionally alleges that she had felt physically intimidated and harassed by non-Caucasian employees, and she had sought out assistance from both union and EEO personnel. *Id.* The administrative judge did not address this issue, finding that only one instance of misconduct was sufficient to support the agency's charge that the appellant had violated the terms of the LCA. ID at 5. We agree. In any event, the record would support a finding that the appellant violated the terms of the LCA when she failed to follow her supervisor's instruction to refrain from "taking on other peoples['] issues." IAF, Tab 4, Subtabs 4e, 4f; *see id.*, Subtab 4i at 2.

¶10     The appellant also asserts that she "did not knowingly enter into the LCA[,] and the LCA is based upon fraud." PFR File, Tab 2 at 8. She explains that she communicated to the agency that she believed management was acting in reprisal for whistleblowing when the agency took the disciplinary action underlying the LCA. *Id.* at 8-9. She avers that she "had no understanding of the basis for the [underlying] disciplinary action," and that "management had refused to respond to [her] multiple inquiries in regards to the nature of" that action. *Id.* She also avers that V.L. "suppressed" her inquiries regarding the underlying disciplinary action. *Id.* at 9. She argues that she signed the LCA because she was not healthy enough to face a disciplinary action after being hospitalized for "potentially fatal cardiac events." *Id.*

¶11     The appellant has offered no evidence of fraud, such as proof that the agency knowingly concealed a material fact or intentionally misled her regarding the terms of the LCA. *See Armstrong v. Department of the*

*Treasury*, [110 M.S.P.R. 533](#), ¶ 18 (2009) (citing *Harris v. Department of Veterans Affairs*, [142 F.3d 1463](#), 1468 (Fed. Cir. 1998)), *aff'd in part, vacated in part*, [591 F.3d 1358](#) (Fed. Cir. 2010). Although the appellant testified that she signed the agreement unwillingly and now regrets doing so, she also testified that she understood her options at the time. HCD 2 (testimony of appellant). The record shows that she negotiated the LCA with union assistance, *see* IAF, Tab 4, Subtab 4i at 4; HCD 1 (testimony of V.L.), and that she received information regarding her appeal rights during the 2012 action, including her option to file a Board appeal, EEO complaint, or grievance, *see* IAF, Tab 4, Subtab 4j at 2-3. Accordingly, we affirm the initial decision.[4]

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

---

[4] The appellant requested leave to file two additional pleadings after the record on review closed. PFR File, Tab 6. These pleadings are an unemployment compensation decision issued by the State of Hawaii on May 15, 2015, and a copy of the agency's Anti-Harassment Policy dated May 1, 2015. *Id.* Such pleadings are not normally accepted unless they contain new and material evidence as defined in [5 C.F.R. § 1201.115](#)(d), and the party submitting them shows that the evidence or argument was not readily available before the record closed. [5 C.F.R. § 1201.114](#)(k). The appellant has not met that standard, and we thus deny her request. *Avansino*, 3 M.S.P.R. at 214; *see also* [5 C.F.R. § 1201.114](#)(b) ("Any petition or cross petition for review that contains new evidence or argument must include an explanation of why the evidence or argument was not presented before the record below closed."); *see Grassell v. Department of Transportation*, [40 M.S.P.R. 554](#), 564 (1989) (to constitute new and material evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed).

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: _____
William D. Spencer
Clerk of the Board

Washington, D.C.